## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

LING YU                                      :
30 Shen Qu, Baiwan Zhuang                    :
Xichang Qu, Beijing                          :
Peoples Republic of China                    :
                                             :
and                                          :
                                             :
WANG XIAONING                                :
30 Shen Qu, Baiwan Zhuang                    :
Xichang Qu, Beijing                          :
Peoples Republic of China                    :
                                             :
            Plaintiffs,                       :
                                             : Civil Action No.  1:11cv92
v.                                           :                   JCC/JFA
                                             :
HARRY HONGDA WU                              :
1708 Broadfield Lane                         :
Vienna VA 22182                              :
                                             :
and                                          :
                                             :
LAOGAI RESEARCH FOUNDATION                   :
1109 M Street, NW                            :
Washington, DC 20005                         :
                                             :
and                                          :
                                             :
LAOGAI HUMAN RIGHTS                          :
ORGANIZATION                                 :
1109 M Street, NW                            :
Washington, DC 20005                         :
                                             :
and                                          :
                                             :
YAHOO! HUMAN RIGHTS FUND                     :
a.k.a                                        :
YAHOO! IRREVOCABLE HUMAN                     :
RIGHTS TRUST                                 :
1109 M Street, NW                            :
Washington, DC 20005                         :
                                             :

1

## **COMPLAINT**

Plaintiffs by their attorneys, allege as their Complaint against Defendants the following:

### **JURISDICTION**

1.      Jurisdiction is founded in this Court pursuant to 28 U.S.C. § 13322.  There is complete diversity between the parties to this action.  Plaintiffs are citizens and residents of the Peoples Republic of China, and each Defendant is a citizen of the Commonwealth of Virginia or the District of Columbia.  The matter in controversy exceeds, exclusive of interest and costs, the jurisdictional requirement of Seventy Five Thousand Dollars ($75,000.00).

### **PARTIES**

3.  Plaintiff Yu Ling ("Plaintiff Yu" or "Yu") is a citizen and resident of the People's Republic of China, domiciled at 30 Shen Qu, Baiwan Zhuang, Xichang Qu, Beijing, Peoples Republic of China.  Plaintiff Yu is the wife of Plaintiff Wang Xiaoning.

4.      Plaintiff Wang Xiaoning ("Plaintiff Wang" or "Wang") is a citizen and resident of the People's Republic of China.  Although currently incarcerated at Beijing Municipal No. 2 Prison, a forced labor prison for political prisoners, Plaintiff Wang is domiciled at 30 Shen Qu, Baiwan Zhuang, Xichang Qu, Beijing, Peoples Republic of China.   Plaintiff Wang is the husband of Plaintiff Yu.

5.      Defendant Harry Hongda Wu ("Defendant Wu" or "Wu), upon information and belief, is a citizen of the United States of America, and is believed to reside at 1708 Broadfield Lane, Vienna VA 22182.  Defendant Wu previously maintained his offices in Virginia, at all times relevant to the allegations of this Complaint, at 1708 Broadfield Lane, Vienna VA 22182.

Defendant Wu can sue and be sued in this Court.

6. Defendant Laogai Research Foundation ("Laogai") is believed to be a 501(c)(3) non-profit corporation, organized and existing under the laws of the Commonwealth of Virginia. Defendant Laogai presently maintains its principal place of business in the District of Columbia at 1109 M Street, NW, Washington, DC 20005 and at all times relevant to the allegations of this Complaint, maintained in the Commonwealth of Virginia offices believed to be located at 1708 Broadfield Lane, Vienna VA 22182. Upon information and belief, Defendant Wu established Laogai in 1992 and at all times relevant to the allegations of this Complaint, and presently, serves as the Executive Director of Laogai. Defendant Laogai can sue and be sue in this Court.

7. Defendant Yahoo! Human Rights Fund ("Yahoo! Fund") is believed to be an irrevocable trust. Defendant Yahoo! Fund maintains its principal place of business in the District of Columbia at the offices of the Defendant Laogai, located at 1109 M Street, NW Washington, DC 20005. Upon information and belief, Defendant Laogai, acting by and through its Executive Director, Defendant Harry Wu, and Defendant Laogai Human Rights Organization are the administrators of the Yahoo! Fund. Defendant Yahoo! Fund can sue and be sued in this Court.

## FACTS COMMON TO ALL COUNTS

### BACKGROUND

8. Yu Ling is a subject, citizen, and resident of the People's Republic of China and is the wife of 30 years of Plaintiff Wang Xiaoning. Plaintiff Wang, a subject, citizen, and resident of the People's Republic of China, is serving a ten year prison sentence in Beijing Municipal No. 2 Prison, a forced labor prison for political prisoners, following his arrest and trial on charges

3

that he allegedly leaked 'state secrets' through the internet.

9. Plaintiff Yu sought to and did bring a legal action in the United States on behalf of herself and her husband against Yahoo! and its subsidiary Yahoo! Hong Kong for providing Plaintiff Wang's IP address and other identifying information to the Chinese governmental authorities which allegedly facilitated his identification by Chinese investigators and subsequent arrest on September 1, 2002.

10. Defendant Wu, a native Chinese speaker, holds himself out as an activist for human rights in the People's Republic of China. Now a resident and citizen of the United States, Defendant Wu reportedly previously spent 19 years incarcerated in Chinese labor camps. Released in 1979 in the liberalization which followed the death of Mao Zedong, Defendant Wu left China and came to the United States. In 1992, Defendant Wu established Defendant Laogai Research Foundation and continues to serve as its Executive Director.

11. Upon information and belief, Defendant Wu helped arrange Plaintiff Yu's travel to the United States in or about March 2007 to allegedly assist her with, *inter alia*, the identification of legal counsel and her subsequent initiation of litigation against Yahoo! Plaintiff Yu subsequently engaged counsel to represent her and her family and initiated a legal action in the United States against Yahoo!.

12. As Plaintiff Yu does not speak English and did not have the predicate knowledge, understanding or capacity to hire counsel and bring a legal action in the United States, Defendant Wu helped Yu Ling retain counsel and established a position of trust with Plaintiff Yu.

13. As set forth above, as Plaintiff Yu does not speak English and prior to 2007 never visited the United States, and Plaintiff Yu believing that Defendant Wu was an honest and truthful individual and purportedly represented a respected face in the Chinese dissident

4

community, Plaintiff Yu accordingly placed her full faith and trust in Defendant Wu, reasonably believing that her best interests including, but not limited to, freeing her husband would be furthered.

14. To that extent, on April 12, 2007, six days before initiation of litigation against Yahoo!, and after retaining counsel, Plaintiff Yu, at the suggestion of Defendant Harry Wu, executed a Power of Attorney ("April 2007 POA") naming Harry Wu "as [her] legally authorized representative " and giving Defendant Wu broad powers to "act for me in any lawful way, and to make any decisions that may be necessary…with respect to my and my Husband Wang Xiaoning's claims and litigation against Yahoo!, Inc and its subsidiaries." The broadly worded April 2007 POA was only in English and was not translated into Chinese for the understanding of Plaintiff Yu.

15. Approximately six days later, on April 18, 2007, suit was filed against Yahoo! and its subsidiary Yahoo! Hong Kong in the U.S. District Court for the California Northern District. Almost immediately thereafter, a public and media outcry ensued in the United States against Yahoo! and its alleged actions in disclosing the identifying information about, *inter alia*, Wang Xiaoning.

16. On or about, April 20, 2007 Yu Ling returned to China.

17. While the litigation was ongoing, and Plaintiffs Yu and Wang were represented by counsel, Plaintiff Wang remained, and remains to this day, imprisoned in China. Plaintiff Yu was brought again to the United States by Defendant Wu and/or Defendant Laogai, in November 2007. On November 6, 2007, a congressional hearing on the subject "Yahoo! Inc.'s Provision of False Information to Congress" was called by then Chairman Tom Lantos before the Committee on Foreign Affairs of the U.S. House of Representatives to investigate, *inter alia*, Yahoo!'s

conduct in disclosing Plaintiff Wang Xiaoning's identity to the Chinese authorities. Plaintiff Yu returned from China for the hearings. Defendants Wu and Laogai arranged for Plaintiff Yu to stay at a location within the Commonwealth of Virginia, where Defendants and/or their agents met with Plaintiff Yu in advance of, and following, the Congressional hearing. As Defendant Wu was Plaintiff Yu's eyes and ears to the English speaking world and Plaintiff Yu reasonably was relying on same, Defendant Wu also attended said hearing.

18. Subsequent to the hearing, in an ante-room at the Capitol, a meeting was held with Defendant Wu, Plaintiff Yu, Jerry Yang, CEO of Yahoo!, Tienchi Liao (Defendant Wu's assistant and employee of Defendant Laogai) and another plaintiff who had filed suit against Yahoo!. Upon information and belief, everyone at the meeting was a native Chinese speaker. Plaintiff Yu's attorney was not present and Defendant Wu, although not a licensed attorney, acted as if he were her attorney representing her interests and the interests of her husband Plaintiff Wang.

19. During this meeting, which was conducted upon information and belief in Chinese, three principals were discussed to settle the case against Yahoo! to wit, (a) Yahoo! would pay a sum of money to the Plaintiffs and their families to compensate them for their injuries/damages, (b) Yahoo! would fund a human rights fund to assist other Chinese dissidents and (c) Jerry Yang would advocate directly to the Chinese government for the release of Wang Xiaoning. Specific dollar amounts that Yahoo! would pay the Plaintiffs as well as the amount of money which Yahoo! would pay to fund the human rights fund were not discussed at this meeting.

20. Believing Defendant Wu had her best interests in mind, and upon the advice and insistence of Defendant Wu, Plaintiff Yu terminated her legal counsel, and Defendant Wu proceeded with the settlement negotiations on behalf of Plaintiffs Yu and Wang.

21. Defendant Wu directed his employee, Tienchi Liao ("Tienchi"), to draft a second Power of Attorney dated November 8, 2007 ("November POA") which authorized Defendant Wu to "have the power of attorney regarding the matter of my and my husband, Wang, Xiaoning's legal settlement with Yahoo! Inc." Unlike the April 2007 POA, the November POA was written by Tienchi in English and Chinese at the instructions of Defendant Wu. Plaintiffs presume that the November POA was provided to Yahoo! as evidence of Defendant Wu's purported authority to act on behalf of Plaintiffs Yu and Wang.

22. Defendant Wu took affirmative steps to make certain that Plaintiff Yu did not know the specific settlement amounts Yahoo! was paying or the other material terms of the settlement, as it was Defendant Wu's intent to conceal same from Plaintiff Yu. Upon information and belief, Defendant Wu specifically avoided consulting with and at no time did he consult with Plaintiff Yu on the terms and conditions of the settlement despite the fact that Plaintiff Yu remained in the Commonwealth of Virginia and the Washington, DC area during the time of Defendant Wu's negotiations with Yahoo!. Moreover, upon information and belief, Defendant Wu specifically instructed Tienchi not to disclose the amounts contained in the Settlement Agreement to Plaintiff Yu and no Chinese-translated document pertaining to the Settlement Agreement and containing the settlement amounts was provided to Plaintiff Yu.

## MONIES PAID FOR THE BENEFIT OF PLAINTIFFS

23. As Plaintiff Yu had been kept away from and out of all settlement negotiations by Defendant Wu, Plaintiff Yu did not know any specifics concerning the monetary settlement negotiated by Defendant Wu. Said settlement included a payment to Defendant Laogai for the benefit of Plaintiffs in the amount of $3.2 million.

24. The public record reflects that although Defendant Laogai's IRS 990 annual reports consistently showed approximately $325,704.00 in income in years prior to the settlement, however in the year of the settlement, their 990 reflects income in the amount of $18,822,665.00 which suggests from public records that Defendant Laogai received significant funds during that particular year.

25. In addition, the public record reflects that Yahoo! issued a press release announcing that it had reached a settlement on the lawsuit filed by the Plaintiffs and that Yahoo! established a human rights fund which upon information and belief the Plaintiffs believe to be Defendant Yahoo! Human Rights Fund. Moreover, upon information and belief, the current website of Defendant Laogai states that it "in partnership with the Laogai Research Fund, Yahoo! created a Human Rights Fund to provide humanitarian and legal support to political dissidents who have been imprisoned for expressing their views online as well as assistance for their families."

26. On or about November 9, 2007, Defendant Wu's representative and Defendant Laogai's employee, Tienchi, at the instruction of Defendant Wu went to Plaintiff Yu's hotel room in the Commonwealth of Virginia and informed her that a settlement with Yahoo! had been reached.

27. At this meeting, Tienchi, at the direct instruction of Defendant Wu, caused Plaintiff Yu to execute a Memorandum of Understanding, written only in English, which outlined the main settlement terms ("November 9, 2007 MOU").

28. Upon information and belief, Tienchi was specifically instructed by Defendant Wu not to disclose any specific settlement amounts to Plaintiff Yu, intending to conceal same from Plaintiff Yu. Tienchi, as the agent and representative of Defendant Wu and Defendant Laogai,

8

agreed not to, and did not, disclose such amounts to Plaintiff Yu.

29.    The November 9, 2007 MOU was only drafted in English and was never translated into Chinese, nor was a copy provided to Plaintiff Yu.

30.    When Tienchi met with Plaintiff Yu, upon information and belief, as agreed with Defendant Wu, Tienchi told Plaintiff Yu that a settlement had been reached based upon the three principles discussed at the Capitol and that Plaintiff Yu needed to execute the November 9, 2007 MOU.

31.    However, in accordance with the instructions of Defendant Wu, acting on his own behalf pursuant to the November POA, and on behalf of Defendant Laogai, Tienchi never disclosed the actual amounts of money that Plaintiff Yu and her family would receive nor the amount of money that Yahoo! agreed to pay as the overall settlement of all claims nor any amount of money that Yahoo! agreed to fund into Defendant Laogai for the establishment of the Yahoo! Human Rights Fund.

32.    After hearing and relying upon these representations, Plaintiff Yu personally signed the November 9, 2007 MOU on her behalf and on behalf of her imprisoned husband. Plaintiff Yu was never provided a copy of the November 9, 2007 MOU.

33.    The same day, on November 9, 2010, Defendant Wu, having effectuated the termination of Plaintiff Yu's attorney and having secured the November POA, proceeded to negotiate and execute a separate document without the knowledge or specific consent of Plaintiffs Yu and Wang; to wit, the Confidential Settlement, Release, and Foundation Agreement ("Settlement Agreement") with Yahoo! on behalf of Plaintiff Yu and Plaintiff Wang, Defendant Laogai and individually.  Defendant Wu presumably executed the Settlement Agreement on behalf of Plaintiff Yu and Plaintiff Wang pursuant to the November 8, 2007 POA despite the fact

9

that Plaintiff Yu was still in the United States, and could easily have been explained to her and she could and should have been requested to execute said Settlement Agreement in her own name, none of which was done.

34.     Moreover, the Settlement Agreement was only drafted in English and was never shown, nor its contents made known to Plaintiff Yu.  The only information that Plaintiff Yu had regarding the Settlement Agreement was through the agreed to oral representations made by Tienchi, Defendants Wu and Laogai's agent and representative, during the aforementioned November 9, 2007 MOU separate discussions.

35.     Unbeknownst to Plaintiff Yu and Plaintiff Wang,  Defendant Laogai is believed to have received monies from Yahoo! at the time monies were paid by Yahoo!  for the benefit of Plaintiff Yu and Plaintiff Wang.  Moreover, unbeknownst to Plaintiff Yu and Plaintiff Wang, the Settlement Agreement negotiated and signed by representatives of Yahoo! and by Defendant Harry Wu acting individually and on behalf of Defendant Laogai and also on behalf of Plaintiff Yu and Plaintiff Wang, required that the money being paid to settle the claims of Plaintiff Yu and Plaintiff Wang (the "Settlement Amount") were being paid without their knowledge or consent to Defendant Laogai to hold in trust for Plaintiffs.  Yahoo! also apparently paid a sum to Defendant Laogai for the creation of the "Yahoo! Human Rights Fund."

36.     Shortly after Defendant Wu, without the knowledge of Plaintiff Yu, executed the Settlement Agreement, Plaintiff Yu returned to China and upon information and belief, monies were subsequently paid pursuant to said Settlement Agreement by Yahoo! for Plaintiff Yu and Plaintiff Wang's benefit "in trust" to  Defendant Laogai directly in early December 2007. Yahoo! also is believed to have funded the Yahoo! Human Rights Fund, which upon information and belief is operated, managed and directed by Defendant Laogai, Defendant Wu and others.

10

**CONDUCT OF DEFENDANTS**

37.     In February 2008, Plaintiff Yu was summoned from China by Defendant Wu to come to the United States for a meeting at Defendant Laogai's headquarters then located in Virginia. At this meeting, Plaintiff Yu was not represented by counsel, was unaccompanied and was still under the impression that Defendant Wu had her best interests in mind. At said meeting, in which the only participants were Plaintiff Yu, Defendant Wu and Tienchi, Defendant Wu for the first time disclosed and advised Plaintiff Yu that he (or Defendant Laogai, as the case may prove to be) had received monies for the Plaintiffs pursuant to the Settlement Agreement. Defendant Wu did not disclose to her the other pertinent terms of the Settlement Agreement, including, but not limited to, any amounts paid to Defendant Laogai or others, nor did he disclose to her that the money received by Defendant Laogai for Plaintiffs benefit had been paid to said Defendant by Yahoo!, for reasons unknown to the Plaintiff, for her benefit but in trust rather than outright to the Plaintiffs.

38.     Specifically, during this February 2008 meeting, Defendants Wu and Laogai, and their representative and agent, Tienchi, continued to conceal the terms of the Settlement Agreement including, but not limited to, that the money paid by Yahoo! to settle Plaintiffs Yu and Wang's claims were paid to Defendant Laogai and that Defendant Laogai agreed to and was obligated to hold said monies in trust for the exclusive benefit of Plaintiffs Yu and Wang pursuant to the Settlement Agreement and that Plaintiffs were unconditionally entitled to said money.

39.     At this time, Defendant Wu acting on his own behalf and/or on behalf of Defendant Laogai also misrepresented to Plaintiff Yu that he or Laogai had paid or was required to pay legal fees to Plaintiff Yu's former counsel of approximately $600,000.00, when in fact

11

that was not true. Defendant Wu also intentionally and materially failed to disclose to Plaintiff Yu that Defendant Laogai had also received a significant sum from Yahoo!, which Defendants Wu and Laogai negotiated for their own benefit, notwithstanding their obligations to Plaintiffs Yu and Wang as their representatives pursuant to the November POA, and further failed to disclose to Plaintiff Yu that from these settlement funds, Defendant Laogai acquired significant other benefits, to the benefit of Defendant Laogai, Defendant Wu and his wife. Upon information and belief, Defendant Wu and his wife have each personally and materially benefitted from the funds received by Defendants Wu and Laogai from Yahoo! coincident with its and their receipt of monies for the settlement of Plaintiffs Yu and Wang's claims against Yahoo!. During said meeting, Tienchi did not correct any of the aforementioned misrepresentations and omissions made by Defendant Wu.

40.     After making the aforementioned misrepresentations and omissions, Defendant Wu upon information and belief, demanded the entire Settlement Amount from Plaintiff Yu as a "voluntary" donation to Defendant Laogai. After Plaintiff Yu refused, upon information and belief, Defendant Wu replied, "$2 million is enough for you" and demanded $1.2 million dollars from Plaintiff Yu. In making such a demand, Defendant Wu became angry and abusive. Defendant Wu chastised Plaintiff Yu that if she failed to give this money to him and to Defendant Laogai she was ungrateful. Specifically, upon information and belief, Defendant Wu further pressured Plaintiff Yu, "without me you would have gotten nothing. We helped you."

41.     As a result of the agreement of Defendant Wu and Tienchi not to fully disclose the full material terms and contents of the Settlement Agreement, and to otherwise fail or refuse to fulfill their obligations pursuant to the Settlement Agreement, Plaintiff Yu did not know that (a) Defendant Laogai agreed and was obligated to hold the Settlement Amount in trust and that

12

Plaintiffs were rightfully entitled to same and did not need to give or donate any money to the Defendants in order to receive her share of the settlement funds; nor did Plaintiffs know that (b) from the significant monies paid to Defendant Laogai to establish the Yahoo! Human Rights Fund, Defendant Laogai benefitted its operations and budget for operating expenses, nor did Plaintiffs know that (c) Defendant Laogai did not have to pay any legal fees to Plaintiffs' former attorney, as those are believed to have been paid directly by Yahoo!. Moreover, as a result thereof, Plaintiff Yu fully believed that in order to receive any of her settlement monies which she understood and believed were under the exclusive control of Defendant Wu and Defendant Laogai, who agreed to hold same in trust, she had to give a significant amount of money to Defendant Wu and/or Defendant Laogai. Plaintiff Yu, acting under extreme duress and without knowing the truth of the above facts which were concealed by Defendant Wu and Tienchi from her, acquiesced to Defendant Wu's demand, but without donative intent, and purportedly agreed to pay the sum of $1 million dollars to Defendant Laogai, same having been extorted from the Plaintiffs by Defendants Wu and Laogai.

42.    Upon verbally extracting the extorted monies, Defendant Wu had Tienchi prepare an affidavit reflecting Plaintiff Yu's purported agreement to give the aforesaid one million dollar sum "Alleged Donation" (hereinafter "Donation" or "Alleged Donation") and caused Plaintiff Yu to execute same ("February 2008 Affidavit").

43.    Upon information and belief, upon the preparation of the February 2008 Affidavit, Defendant Wu and Tienchi immediately transported Plaintiff Yu to the Bank of America branch located in the Commonwealth of Virginia where the Settlement Amount belonging to Plaintiffs were/are believed to have been maintained by Defendants in trust for Plaintiffs. Upon information and belief, once at the Bank of America branch, Defendant Wu had Plaintiff Yu sign

the February Affidavit before a notary of the bank. Upon information and belief, immediately thereafter, Defendant Wu transferred the $1 million dollars from the accounts of Defendant Laogai where the settlement proceeds for the benefit of Plaintiffs Yu and Wang had been accepted by Defendants Wu and Laogai ("Trust Funds") into the checking account of Defendant Laogai. Upon information and belief, Defendants Wu, Laogai and/or Yahoo! Fund each may have unjustly benefited from the Alleged Donation, all to their benefit and to the detriment of the Plaintiffs.

44. At no time since the Alleged Donation up until present, has Defendant Wu nor Defendant Laogai provided a written receipt to Plaintiff Yu for her one million dollar claimed Alleged Donation, nor is Defendant Laogai entitled to have received, nor to continue to have or hold for its benefit, all as ill gotten gains of their improper conduct to the detriment of the Plaintiffs, and to their unjust enrichment.

45. Following the extorted $1 million dollar Alleged Donation by Plaintiff Yu, rather than releasing the remaining amount of funds received for the benefit of the Plaintiffs, Defendants Wu and Laogai sought ratification of the extorted Alleged Donation which has continued to be withheld from Plaintiffs, and further, have failed and refused to release all of said remaining Trust Funds to the Plaintiffs, notwithstanding repeated demands.

46. In February 2010, Tienchi left Defendants Laogai and Wu's employ. Subsequently, Tienchi was contacted by Plaintiff Yu who asked her for help. It was at this time that Tienchi began assisting Plaintiff Yu in attempting to retrieve the full sum of monies duly owed to her and her husband by Defendants, and Tienchi proceeded to make a full disclosure of the truthful facts to Plaintiff Yu, including the full extent of the wrongful and illegal acts of Defendants Wu and Laogai, which were carried out, *inter alia*, with the intent and for the

14

purpose of unjustly enriching the Defendants, and each of them, and converting Plaintiffs' money to their own use, all to Plaintiffs' detriment

47.     The full facts and intent of Defendant Wu and Defendant Laogai were discovered by Plaintiffs when Plaintiff Yu retained counsel in May 2010. Counsel confirmed to Plaintiff Yu that pursuant to the Settlement Agreement (a) she and her husband were entitled without condition to the Settlement Amount, which Defendant Laogai agreed to hold on their behalf in trust, (b) Defendant Laogai is believed to have been given a significant sum of money in excess of the Settlement Amount paid on Plaintiffs' behalf by Yahoo! which upon information and belief established and funded the Yahoo! Human Rights Fund operated by Defendant Laogai and others (c) Defendant Laogai did not have to pay $600,000 in attorneys fees to her prior attorneys, as her prior attorneys were paid separately and directly by Yahoo! and (d) Defendant Laogai received from Yahoo! significant funds for its operational expenses, which presumably and under information and belief has personally benefitted Defendant Harry Wu and his wife. Immediately thereafter, Plaintiff Yu's counsel made demands for the full return of all monies and delivery of copies of all accounts and statements reflecting the location and value of assets being held in trust by Defendants for Plaintiffs.

48.     Plaintiffs have only subsequent thereto learned that not only did Defendant Wu and Defendant Laogai extort the $1 million dollar Alleged Donation, to which they were not entitled, and which they secured under false and fraudulent misrepresentations on February 20, 2008, and that upon information and belief, Defendants Wu, Laogai and/or Yahoo! Fund were unjustly enriched thereby, but that Defendant Wu and Defendant Laogai otherwise have acted to deprive the Plaintiffs of the monies which they received in trust and for the benefit of the Plaintiffs, to wit:

15

a. On January 29, 2009, Defendant Wu converted to the benefit of Defendant Wu an additional $1 million of Plaintiffs' monies which was to be held in trust. In or about August 06, 2010, Plaintiffs were provided for the first time a copy of an annuity application which reflects that Defendant Wu had taken $1 million dollars and converted it to his own personal benefit by purchasing an annuity in his own name from Trans America Capital Builders, with the money that Defendants were holding in trust for Plaintiffs. In said application, not only did Defendant Wu certify himself as the owner of the funds, but he misrepresented and certified of Plaintiff Yu as being his cousin, which she is not. See copy of Annuity application attached hereto as Exhibit 1.

b. Defendant Wu has converted other monies of Plaintiffs to his and Defendant Laogai's benefit; said funds being held in Defendant Wu's individual name at PNC Investments, all to the detriment of the Plaintiffs.

c. Unbeknownst to Plaintiffs, Defendant Wu and his wife Ching Lee Chen, who is the Secretary and Treasurer for Laogai and also its accountant, have doubled their yearly compensation following the settlement, all to the detriment of the Plaintiffs.

d. Defendant Laogai purchased a building located at 1109 M Street, NW for the sum of $1.45 million in Washington DC as its new headquarters, all to the detriment of the Plaintiffs.

e. Defendant Wu invested Plaintiffs money contrary to their best interest and in his own name, all to the detriment of the Plaintiffs.

f. Defendants Wu and Laogai have otherwise breached his and their fiduciary

obligations to the Plaintiffs, all to the detriment of the Plaintiffs.

49. The Defendants have failed and refused to return to Plaintiffs all their monies presently being withheld from Plaintiffs, to wit, the sum of $3.2 million dollars plus interest, less the actual distributions made to and for the benefit of the Plaintiffs, although demand has been made for same, all to the detriment and damage of the Plaintiffs.

## COUNT I

## CONVERSION

50. Plaintiffs reallege and incorporate the facts and allegations set forth in paragraphs 1-49 above as if set forth herein in full.

51. At all times herein Plaintiffs were and still are the owners of and entitled to immediate possession of the Settlement Amount paid by Yahoo! to be held in trust by Defendants Laogai and Wu.

52. Pursuant to the Settlement Agreement, Defendant Laogai, which is controlled by Defendant Wu, was the designated fiduciary of the Settlement Amount paid to the Plaintiffs pursuant to the Settlement Agreement negotiated by Defendants Wu and Laogai. Accordingly, Defendants Wu and Laogai have/had the exclusive control over Plaintiffs' monies.

53. In addition to the fraudulent taking of the Alleged Donation in February 2008, despite demand for same, Defendants have failed or refused to pay to Plaintiffs nor to anyone for them, the monies due and owing, but instead have wrongfully detained and converted same to their own use and control.

54. Defendant Wu further wrongfully converted Plaintiffs' property when on January 29, 2009, Defendant Wu converted to his own use, and to the detriment of the Plaintiffs, one

17

million dollars of Plaintiffs' monies, which was to be held in trust, and transferred said funds into his own name, when he purchased an annuity in his own name from Trans America Capital Builders, thereby denying Plaintiffs access to their property; and for all of which the Plaintiffs are entitled to judgment including an order disgorging all assets of the Defendants over to the Plaintiffs as damages resultant from the coercive, fraudulent, deceptive and wrongful conduct of the Defendants, and each of them.

55. In addition, Defendant Wu has converted other monies of Plaintiffs to his and Defendant Laogai's benefit; specifically, Defendant have placed funds which were to be held in trust for Plaintiffs into investment accounts held in Defendant Wu's individual name at PNC Investments. Upon information and belief, these funds were placed into the PNC Investment account in Defendant Wu's name, for all of which Plaintiffs are entitled to judgment including an order disgorging all assets of the Defendants over to the Plaintiffs as damages resulting herefrom, said judgment to be entered against the Defendants jointly and severally for all amounts and in such sums as Plaintiffs are entitled.

56. Upon hiring counsel on or about May 2010, Plaintiffs first learned of the aforementioned conversion and duly demanded of the Defendants that they return the monies to Plaintiffs.

57. Defendants have not paid over to Plaintiffs nor to anyone for them, except for the actual distributions made to and for the benefit of the Plaintiffs, the monies due and owing, but instead has wrongfully detained and converted same to their own, all to the damage of Plaintiffs in amounts to be proven at trial, and for all of which Plaintiffs are entitled to judgment including an order of disgorgement of all assets of the Defendants for the benefit of the Plaintiffs resulting herefrom.

## COUNT II

## UNDUE INFLUENCE AND SELF DEALING

58.     Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in paragraphs 1-57.

59.     During the course of the relationship between the parties, there was great opportunity for Defendant Wu to exercise significant persuasion over Plaintiff in that:

       a.  Plaintiffs do not speak English,

       b.  Prior to Plaintiff Yu's traveling to the United States for the first time in March 2007, Plaintiff Yu had never been to the United States,

       c.  Defendant Wu, a native Chinese speaker, who is also an activist for human rights in the People's Republic of China, held himself out as a champion of victims such as Plaintiffs, and befriended Plaintiff Yu to assist her in her quest to have her husband released from prison in China and to also seek compensation as a result thereof, and

       d.  As a result thereof, Plaintiff Yu  believing that Defendant Wu was an honest and truthful individual and purportedly represented a respected face in the Chinese dissident community, placed her full faith and trust in Defendant Wu, reasonably believing that her best interests including, but not limited to, freeing her husband would be furthered.

60.     As a result of that trust and influence, Defendant Wu (a) became Plaintiffs eyes and ears to the English speaking world, (b) secured from Plaintiff Yu on two separate occasions the authority to act on behalf of Plaintiffs with regards to their claims against Yahoo!, (c) under

the Settlement Agreement negotiated by Defendant Wu became the trustee over the Settlement Amount paid pursuant thereto, which said funds have been largely withheld from the Plaintiff by the Defendants, and each of them, who have been unjustly enriched and have benefited from the conversion and use of Plaintiffs money without consideration or basis in law or fact, and for all of which the Plaintiff is entitled to judgment in such amounts as are allowed by applicable law.

61. Notwithstanding the foregoing, Defendant Wu did not disclose, *inter alia,* to Plaintiffs that (a) Defendants were holding the Settlement Amount in trust on Plaintiffs behalf pursuant to the Settlement Agreement and the Plaintiffs did not have to donate any money to the Defendants in order to receive this money which was rightfully theirs, (b) Defendant Laogai received a significant amount of money from Yahoo! for itself and was not entitled to receive or demand any additional monies from the Plaintiffs on whose behalf the Defendants acted as trustees, but acted for their own benefit and to the detriment of the Plaintiffs, (c) from said money, Defendant Laogai was permitted to use significant monies for operating expenses, (d) that Plaintiffs prior counsel's legal fees had been paid separately by Yahoo!, (e) Plaintiffs were not obligated to donate any money to Defendant Laogai, and (f) Defendant Laogai had also received upon information and belief significant money from Yahoo!, which according to Defendant Laogai's tax filings are believed to be in excess of $17 million, which Defendants Wu and Laogai negotiated for their own benefit, notwithstanding their obligations to Plaintiffs Yu and Wang as their representatives pursuant to the November POA.

62. Defendant Wu was required to fully disclose the aforementioned facts and to deal fairly and honestly, free of coercion and duress, with Plaintiffs, and as trustee placing Plaintiffs interests above the interests of the Defendants, and each of them.

63. Defendant misused and abused and violated the Plaintiffs trust and confidence

against the Plaintiffs and misused and abused such to influence Plaintiffs into involuntarily making (a) a $1 million Alleged Donation to Defendant Laogai and (b) permitting Defendants to continue to hold and use Plaintiffs settlement funds, all to Plaintiffs detriment and for which Plaintiffs demand return of all of their money and disgorgement of the assets of the Defendants, which said assets with interest earned thereon are to be delivered forthwith to the Plaintiffs and without further delay or abuse by the Defendants, and each of them.

64. Plaintiffs were injured as a result of Defendants' acts or omissions, and undue influence and self dealing.

65. As a direct and proximate result of Defendants' actions and breaches by self dealing, Plaintiffs' suffered damages in an amount to be established at trial, all to their damage and for which Plaintiffs seek of the court Judgment and all rights to which they are entitled at law and in equity.

## COUNT III

## UNJUST ENRICHMENT

66. Plaintiffs reallege and incorporate the facts and allegations set forth in paragraphs 1-65 above as if set forth herein in full.

67. On or about February 20, 2008 the Defendants, and each of them, were unjustly enriched as a result of their egregious and coercive conduct in procuring from Plaintiff Yu, an Alleged Donation of one million dollars, thereby, upon information and belief, unjustly enriching said Defendants and conferring a benefit, without consideration, on Defendants Wu, Laogai and Yahoo! Human Rights Fund.

68. At the time of the Alleged Donation Plaintiff Yu fully lacked the donative intent necessary for the conferral of said benefit on Defendants as evidenced by the coercive

environment in which the gift was demanded and obtained by the Defendants and allegedly made by the Plaintiff Yu.

69.     Defendants Wu, Laogai and Yahoo! Human Rights Fund voluntarily accepted and retained the $1 million dollar benefit conferred when said Alleged Donation was deposited at a branch of Bank of America into a Defendant Laogai account and used for the benefit of Defendants Wu, Laogai and the Yahoo! Human Right Fund, all to the detriment of the Plaintiff.

70.     The Defendants' retention of this benefit was inequitable.

71.     Defendants Wu, Laogai and Yahoo! Human Rights Fund have been unjustly enriched at the expense of Plaintiffs.

72.     Plaintiffs are entitled to damages as a result of Defendants unjust enrichment, including, but not limited to, the disgorgement of all monies unlawfully accepted by Defendants from Plaintiffs and all other resultant and attendant damages.

73.     As a direct and proximate result of Defendants' actions, Plaintiffs have suffered damage as alleged herein.

## COUNT IV

## FRAUD AND MISREPRESENTATION

74.     Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in paragraphs 1-73.

75.     On February 20, 2008, Defendants made intentional and false representations and omissions to Plaintiff Yu.  These fraudulent acts, representations and omissions included, but were not limited to, the following:

       a.     failing to advise Plaintiff Yu that pursuant to the Settlement Agreement,

22

Plaintiffs were entitled without condition to receipt of the Settlement Amount, and that Defendants were holding said monies in trust on Plaintiffs behalf and the Plaintiffs did not have to donate any money to the Defendants in order to receive the money which was rightfully theirs.

b.   misrepresenting to Plaintiff Yu that Defendant Wu and/or Laogai had paid or had to pay legal fees of approximately $600,000.00, when in fact any attorney's fees owed to Plaintiffs' prior counsel were separately paid by Yahoo!.

c.   failing to disclose to Plaintiff Yu the amount of money also paid by Yahoo! under the Settlement Agreement for the creation of the Yahoo! Human Rights Fund and that from said money, Defendant Laogai was additionally entitled to use significant monies for its operations.

76.     Defendants knew the representations were false when Defendants made them or Defendants made the representations mentioned above with a reckless disregard for their truth or falsity.

77.     Defendants made the representations and omissions mentioned herein with the intent and for the purpose of concealing the truth from the Plaintiffs, deceiving Plaintiffs and to induce Plaintiffs into relying thereon.

78.     In reliance on Defendants' representations and omissions, Plaintiff Yu without the donative intent, involuntarily made a $1 million Alleged Donation to Defendant Laogai and also permitted Defendants to continue to hold and use Plaintiffs settlement funds, all to Plaintiffs' detriment and loss and for all of which the Plaintiffs seek judgment against the Defendants, jointly and severally, in amounts permitted by applicable law.

79.     As a direct and proximate result of Defendants misrepresentations and omissions

as described herein, Plaintiffs have suffered damage as alleged herein.

## COUNT V

## BREACH OF CONTRACT

80. Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in paragraphs 1-79.

81. The Settlement Agreement was a binding written contract signed by Defendant Wu individually and on behalf of Laogai, pursuant to the Settlement Agreement under Section II Subsection B(1) Defendant Laogai, which was controlled by Defendant Wu, became the recipient of monies as a result of the claims of the Plaintiffs, designating themselves as trustee of the Settlement Amount to be paid to and for the benefit of the Plaintiffs pursuant to the Settlement Agreement.

82. Under their contractual obligations, the Settlement Agreement calls for Defendants Laogai and Wu to hold such monies "in separate trust accounts in name of the...Shi Family. The monies from the separate trust accounts will be distributed by the Laogai Research Foundation to the [Shi Family], and will not be used for any other purpose." Moreover, Subsection B(2) of the Settlement Agreement provides that Defendants Wu and Laogai were obligated to hold in trust the monies for the exclusive use and benefit of the Plaintiffs and had the duty under the Settlement Agreement to do so Defendants Wu and Laogai repeatedly breached and continue to breach this contractual obligation to hold said monies in trust. These breaches included, but are not limited to:

      a.      Commingling of Plaintiffs' funds with Defendants.

      b.      Misrepresenting and concealing the fact that Plaintiffs were entitled

without condition to the Settlement Amount pursuant to the Settlement Agreement.

c.     Defendants were obligated to hold in trust for Plaintiffs benefit the Settlement Amount and that Plaintiffs did not have to donate any money including, but not limited to, the $1 million dollar "alleged donation" of February 8, 2008 to Defendants in order to receive this money, which was rightfully theirs.

d.     Converting to the benefit of Defendant Wu an additional $1 million of Plaintiffs' monies by purchasing an annuity in Defendant Wu's own name from Trans America Capital Builders, with the money that Defendants were holding in trust for Plaintiffs and which said monies the Defendants have converted to their own use, all to the detriment and loss of the Plaintiffs.

e.     Converting other monies of Plaintiffs to Defendant Wu's by placing funds which had been given to Defendants in trust into Defendant Wu's individual name at PNC Investments, all to the detriment and loss of the Plaintiffs.

f.     Investing Plaintiffs money contrary to their best interest.

g.     Otherwise deprive Plaintiffs of the benefit of their monies due pursuant to the Settlement Agreement.

h.     Failing and refusing, in spite of repeated demand, to pay to Plaintiffs the sum of $3.2 million plus interest being wrongfully withheld from Plaintiffs, all to their damage.

83.   Moreover, Defendants' breach is further evidenced by the fact that Defendants worked more to protect their own interests, than the interests of the Plaintiffs which is evidenced by:

a.      Unbeknownst to Plaintiffs, Defendant Wu and his wife, Ching Lee Chen who is the Secretary and Treasurer for Laogai and also its accountant, have doubled their yearly compensation following the settlement, to their unjust enrichment and benefit and all to the detriment, loss and damage of the Plaintiffs.

b.      Defendant Laogai purchased a building located at 1109 M Street, NW for the sum of $1.45 million in Washington DC as it new headquarters.

c.      Defendants Wu and Laogai materially benefitted from monies paid to Defendant Laogai by Yahoo!

d.      Defendants Wu and Laogai materially benefitted from Laogai's establishment with Yahoo! of the Yahoo! Human Rights Fund.

84.      As a direct and proximate result of Defendants breach of their contractual obligations under the Settlement Agreement, Plaintiffs have suffered damage as alleged herein for all of which they seek judgment, jointly and severally against the Defendants, and each of them, for the conduct of the Defendants, and each of them.

## COUNT VI

### BREACH OF FIDUCIARY DUTY PURSUANT TO THE NOVEMBER 11, 2007 POWER OF ATTORNEY

85.      Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in paragraphs 1-84.

86.      Pursuant to the November 11, 2007 Power of Attorney which Defendant Wu held, a fiduciary obligation existed between Plaintiffs and Defendants.

87.      Defendant Wu continuously breached this fiduciary relationship. These breaches

included, but are not limited to:

    a.    Negotiating as part of the Settlement Agreement a monetary benefit for the Defendants when the obligation of the Defendants, pursuant to the November 11, 2007 Power of Attorney granted by Plaintiffs to Defendant Wu, was to act on behalf of the Plaintiffs and not otherwise.

    b.    Holding himself out as an attorney, acting as if he were a licensed attorney, although he is not, and causing Plaintiffs to terminate their licensed attorneys, thereby paving the way for Defendants Wu and Laogai to negotiate monies for themselves and their own benefit and to the detriment of the Plaintiffs.

    c.    Negotiating the Settlement Agreement on behalf of the Defendants, and to the detriment of the Plaintiffs, such as to name themselves as trustees over Plaintiffs funds, and thereby depriving Plaintiffs of such monies, for all of which Plaintiffs seek judgment in such amounts as permitted by law.

88.    Defendants worked more to protect their own interests, than the interests of the Plaintiffs, this is evidenced by:

    a.    Unbeknownst to Plaintiffs, Defendant Wu and his wife, Ching Lee Chen who is the Secretary and Treasurer for Laogai and also its accountant, have doubled their yearly compensation following the settlement.

    b.    Defendant Laogai purchased a building located at 1109 M Street, NW for the sum of $1.45 million in Washington DC as it new headquarters, and

    c.    Otherwise depriving Plaintiffs the Plaintiffs of the benefit of their monies due pursuant to the Settlement Agreement.

    d.    Defendants Wu and Laogai materially benefitted from monies paid to

Defendant Laogai by Yahoo!

 e. Defendants Wu and Laogai materially benefitted from Laogai's establishment of the Yahoo! Human Rights Fund.

89. As a direct and proximate result of Defendants breach of their fiduciary duty, Plaintiffs have suffered damage as alleged herein and for which Plaintiffs seek Judgment against the Defendants, jointly and severally.

## COUNT VII

## BREACH OF FIDUCIARY DUTY
## PURSUANT TO THE SETTLEMENT AGREEMENT

90. Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in paragraphs 1-89.

91. Pursuant to the Settlement Agreement, Defendant Laogai, which was controlled by Defendant Wu, was the designated trustee of the Settlement Amount paid to the Plaintiffs pursuant to the Settlement Agreement. Accordingly, Defendants Wu and Laogai had the exclusive control over Plaintiffs monies and as such a fiduciary obligation existed between Plaintiffs and Defendants.

92. Defendant Wu continuously breached this fiduciary relationship. These breaches included, but are not limited to:

 a. Commingling of Plaintiffs' funds with Defendant's.

 b. Misrepresenting and concealing the fact that Plaintiffs were entitled without condition to the Settlement Amount pursuant to the Settlement Agreement.

c.     Misrepresenting and concealing the fact that Defendants were obligated to hold in trust for Plaintiffs benefit the  Settlement Amount pursuant to the Settlement Agreement and that Plaintiffs did not have to donate any money to Defendants in order to receive this money, which was rightfully theirs.

d.     Converting to the benefit of Defendant Wu an additional $1 million of Plaintiffs' monies by purchasing an annuity in Defendant Wu's own name from Trans America Capital Builders, with the money that Defendants were holding in trust for Plaintiffs.

e.     Converting other monies of Plaintiffs to Defendant Wu's by placing funds which had been given to Defendants in trust into Defendant Wu's individual name at PNC Investments.

f.     Investing Plaintiffs money contrary to their best interest.

g.     Failing and refusing to release to Plaintiffs the sum of $3.2 million, plus interest, less the actual distributions made to and for the benefit of the Plaintiffs, which Defendants Wu and Laogai have and continue to wrongfully withhold from the Plaintiffs.

93.     Defendants worked more to protect their own interests, than the interests of the Plaintiffs, this is evidenced by:

a.     Unbeknownst to Plaintiffs, Defendant Wu and his wife, Ching Lee Chen who is the Secretary and Treasurer for Laogai and also its accountant, have doubled their yearly compensation following the settlement.

b.     Defendant Laogai purchased a building located at 1109 M Street, NW for the sum of $1.45 million in Washington DC as it new headquarters, and

c. otherwise depriving Plaintiffs the Plaintiffs of the benefit of their monies due pursuant to the Settlement Agreement.

d.     Failing and refusing to release to Plaintiffs the sum of $3.2 million, plus interest, less the actual distributions made to and for the benefit of the Plaintiffs, which Defendants Wu and Laogai have and continue to wrongfully withhold from the Plaintiffs.

93. As a direct and proximate result of Defendants breach of their fiduciary duty, Plaintiffs have suffered damage as alleged herein and for which Plaintiffs seek Judgment against the Defendants, jointly and severally.

## COUNT VIII

## INJUNCTION

94. Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in paragraphs 1-93.

95. As described in the Complaint, Defendants are holding Plaintiffs property; to wit, the sum of $3.2 million, plus accrued interest, less the actual distributions made to and for the benefit of the Plaintiffs, notwithstanding repeated demand for return of same, which was to be held in trust by Defendants Laogai and Wu.

96. Because Defendants have refused to turn over the sum of $3.2 million, plus accrued interest, less the actual distributions made to and for the benefit of the Plaintiffs, this act has caused irreparable harm to the Plaintiffs, and if allowed to continue, will result in further irreparable harm.

97. Plaintiffs are entitled to an Order requiring the Defendants to turn over the sum of $3.2 million, plus accrued interest, less the actual distributions made to and for the benefit of the

Plaintiffs, which Defendants were to hold in trust for the exclusive benefit of the Plaintiffs, and for which demand has been made in writing, and which Defendants have failed and refused to deliver and return to the Plaintiffs, all to their continuing damage and irreparable harm.

WHEREFORE, Plaintiffs demand the following:

1. Judgment against the Defendants, jointly and severally, for all damages to which Plaintiffs may be entitled pursuant to each of the counts alleged in the Complaint.

2. Judgment against Defendants, jointly and severally, for disgorgement and turnover of all monies including interest and earnings taken by the Defendants and used to their benefit and to the detriment of the Plaintiffs in such amounts as the Plaintiffs may be entitled, including but not limited to, the disgorgement and sale of Defendant Laogai's headquarters at 1109 M Street, NW as necessary to satisfy the judgment awarded herein.

3. Judgment against Defendants, jointly and severally, for punitive damages as allowed under law in an amount to be determined at trial.

4. Judgment against the Defendants, jointly and severally, for threefold the damages to which Plaintiffs may be entitled.

5. Judgment against the Defendants, jointly and severally, for all costs expended herein.

6. Judgment against the Defendants, jointly and severally, for an award of reasonable attorney's fees.

7. Judgment against Defendants, jointly and severally, for any and all other relief to which Plaintiff may be entitled, either jointly or severally from Defendants.

8. Entry of an Injunction requiring Defendants to turn over the sum of $3.2 million, plus accrued interest, less the actual distributions made to and for the benefit of the Plaintiffs, which is being wrongfully held by the Defendants.

9. Trial by jury on all issues so triable.

10. Leave of Court to amend this Complaint as the interests of justice require.

Dated this 28th day of January, 2011.    Respectfully submitted,

By: _____
Barry Coburn (Virginia Bar No. 36907)
COBURN & COFFMAN PLLC
1244 19th Street, Northwest
Washington, D.C. 20036
Telephone: (202) 657-4490
Facsimile: (866) 561-9712

*Of Counsel*:

HEIDEMAN NUDELMAN & KALIK, P.C.
1146 19th Street, NW
Fifth Floor
Washington, D.C. 20036
Telephone: (202) 463-1818
Facsimile: (202) 463-2999
Richard D. Heideman
Noel J. Nudelman
Tracy Reichman Kalik
Matthew S. Apfel